Not For Publication

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                      )
IN RE:                                )   CASE NO.        10-33586 (LMW)
                                      )
  CESAR G. SILVA,                     )   CHAPTER         7
                                      )
        DEBTOR.                       )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
  FORD MOTOR CREDIT CO, LLC,          )   ADV. PRO. NO.   11-3007 (LMW)
  FORMERLY MAZDA AMERICAN             )
  CREDIT, INC.,                       )   ECF NO.         1
                                      )
        PLAINTIFF,                    )
                                      )
        vs.                           )
                                      )
  CESAR G. SILVA,                     )
                                      )
        DEFENDANT.                    )
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### APPEARANCES

Walter J. Onacewicz, Esq.                 Attorney for Plaintiff
Mitchell J. Levine, Esq.
Nair & Levin, P.C.
707 Bloomfield Avenue
Bloomfield, CT 06002


Andrea Anderson, Esq.                     Attorney for Defendant/Debtor
Law Offices of Andrea Anderson, LLC
182 Grand Street, Suite 411
Waterbury, CT 06702


## BRIEF MEMORANDUM AND ORDER
## RE: COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT


Lorraine Murphy Weil, Chief United States Bankruptcy Judge

**WHEREAS,** this court has jurisdiction over this proceeding as a core proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and that certain Order dated September 21, 1984 of this District (Daly, C.J.).[1]  This memorandum constitutes the findings of fact and conclusions of law mandated by Rule 52 of the Federal Rules of Civil Procedure (made applicable here by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure);

## BACKGROUND

**WHEREAS,** this chapter 7 case was commenced by the above-referenced debtor (the "Debtor") by petition filed on December 2, 2010.  (*See* Case ECF No. 1.)[2]  The Debtor received his chapter 7 discharge on March 2, 2011.  (*See* Case ECF No. 30.);

**WHEREAS,** Ford Motor Credit Company LLC (formerly Mazda American Credit, Inc., collectively, "FMC") commenced this adversary proceeding by a complaint filed on January 31, 2011.  (*See* ECF No. 1, the "Complaint.");

**WHEREAS,** the Debtor filed his answer to the Complaint on March 2, 2011.  (*See* ECF No. 9.);

**WHEREAS,** the Complaint seeks a declaration that the below-described debt (the "Debt") owing by the Debtor to FMC was not discharged in this chapter 7 case pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4) and/or 523(a)(6);

---

[1]    That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C. , or arising in . . . a case under Title 11, U.S.C. . . . ."

[2]    References to the docket of this chapter 7 case appear in the following form: "Case ECF No. __." References to the docket of this adversary proceeding appear in the following form: "ECF No. __." References to the oral record of the Trial (as defined below) appear in the following form: "Oral Record of Trial at __:__:__."

**WHEREAS,** a trial (the "Trial") was had on the Complaint on December 12, 2011.  At the

Trial, Ronald Ciarlo (FMC's business development manager) and the Debtor testified for FMC; the

Debtor's counsel cross-examined both witnesses.  FMC put documentary evidence into the record.[3]

At the conclusion of the Trial, the court took the matter under advisement (subject to post-trial

briefing).  Post-trial briefing now is complete and the matter is ripe for the decision set forth below;

## FACTS

**WHEREAS,** the court finds as fact:

• On or about May 15, 2008, the Debtor entered into a Retail Installment Contract (the "Contract") with FMC for the purchase on credit of a used 2006 FORD F350 (the "Truck"). (*See* Oral Record of Trial at 10:19:00 *et seq.* (testimony of Mr. Ciarlo); Oral Record of Trial at 10:40:55 *et seq.* (testimony of the Debtor).)

• The Contract granted FMC a security interest in the Truck which was perfected by notation on the Certificate of Title (Exh. B).  (*See* Oral Record of Trial at 10:24:22 *et seq.* (testimony of Mr. Ciarlo).)

• Paragraph E of the Contract also provides that the buyer "must take care of the vehicle and obey all laws in using it.  You may not sell or rent the vehicle, and you must keep it free from the claims of others," (Exh. A).  (*See also* Oral Record of Trial at 10:23:34 *et seq.* (testimony of Mr. Ciarlo).)

• Even though sale of the collateral is expressly prohibited by the Contract, FMC's policy is that if a buyer wants to pass along the collateral to a third party, FMC if requested would conduct a credit investigation of the third party to determine credit worthiness and, if appropriate, have a transfer of equity agreement signed by all the parties. (*See id.* at 10:38:40 *et seq.*)

• The Debtor made approximately 20 out of 72 monthly payments on the Contract.  (*See* Exhibit A; Exhibit C; Oral Record of Trial at 10:25:20 *et seq.* (testimony of Mr. Ciarlo); *id.* at 10:41:37 *et seq.* (testimony of the Debtor).)  The last payment made was on or about September 7, 2010 and the Debtor is in default under the Contract. (*See id.* at 10:19:00 *et seq.* (testimony of Mr. Ciarlo).)

---

[3] References herein to those exhibits appear in the following form: "Exh. __." The Debtor did not put documentary evidence into the record.

- Some time before September 7, 2010, the Debtor decided that he could not afford making monthly payments on the Truck and called FMC to turn the Truck back in. (*See* Oral Record of Trial at10:41:50 *et seq.* (testimony of the Debtor).)

- However, the Debtor changed his mind and sold or otherwise transferred the Truck to a Mr. Edgar Rodrigues Goldinho (the "Truck Transaction"). (*See id.* at 10:41:50 *et seq.*)

- Mr. Goldinho was the Debtor's employee since 2006. (*See id.* at 10:44:55 *et seq.*)

- The Debtor and Mr. Goldinho are not related but the Debtor used to date the other man's sister. (*See id.* at 10:49:09 *et seq.*)

- The Debtor knew that Mr. Goldinho had bad credit (*see* Oral Record of Trial at 10:42:28 *et seq.* (testimony of the Debtor)) and thought Mr. Goldinho "might" be an illegal alien (*see id.* at 10:50:30 *et seq.*).[4]

- The Debtor entered into the Truck Transaction with Mr. Goldinho in consideration of (a) his making the monthly payments and (b) his forgiveness of a $4,500 loan owed to him by the Debtor. (*See id.* at 10:52:25 *et seq.*)

- The arrangement was that Mr. Goldinho was to make the payments to the Debtor in cash, and the Debtor then would make the payments to FMC. (*See* Oral Record of Trial at 10:42:20 *et seq.* (testimony of the Debtor).)

- The Debtor testified at the Trial that he did not think anything was wrong with the foregoing arrangement  because "it was only a truck." (*See id.* at 11:04:06 *et seq.*)

- Mr. Goldinho made about 6 or 7 cash payments to the Debtor, then stopped making payments and disappeared with the Truck. (*See id.* at 10:42:30 *et seq.*) That occurred sometime in September/October of 2010. (*See id.* at 10:55:00 *et seq.*) The Debtor remitted all payments made to him by Mr. Goldinho to FMC. (*See id.* at 10:42:30 *et seq.*)

- The Debtor did not notify FMC about the Truck Transaction until after Mr. Goldinho stopped making payments and FMC contacted the Debtor about the payment default. The Debtor then tried looking for Mr. Goldinho (and the Truck), but both had disappeared. (*See* Oral Record of Trial at 10:46:25 *et seq.* (testimony of the Debtor).)

- The Truck was in good condition when the Debtor sold it to Mr. Goldinho. (*See id.* at 11:10:20 *et seq.*)

---

[4]     The record does not support a finding that Mr. Goldinho *was* an illegal alien.

- 4 -

• The NADA retail value of the Truck at the time of the filing of the petition was $29,200.00. (*See* Exhibit D; Oral Record of Trial at 10:29:50 *et seq.* (testimony of Mr. Ciarlo).)

• The Debtor owes $39,800.13 to FMC on account of the Contract/Truck.  (*See* Exhibit C (last page); Oral Record of Trial at 10:28:40 *et seq.* (testimony of Mr. Ciarlo).)

• FMC obtained relief from stay (*see* Exhibit E; Oral Record of Trial at 10:32:25 *et seq.* (testimony of Mr. Ciarlo)) but was unable to repossess the Truck (*see id.* at 10:32:30 *et seq.*), and there was no insurance to cover this loss (*see id.* at 10:33:01 *et seq.*);

## ANALYSIS

### A.    Dischargeability (In General)

**WHEREAS,** 11 U.S.C. § 523 provides in relevant part as follows:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt–
. . .
  (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
. . .
  (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
. . .
  (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

11 U.S.C.A. § 523 (West 2012);

**WHEREAS,** exceptions to discharge must be strictly construed in favor of the debtor in order to effectuate the fresh start policy of bankruptcy.  *See Rosenblit v. Kron (In re Kron)*, 240 B.R. 164, 165 (Bankr. D. Conn. 1999) (Krechevsky, J.).  The party seeking to establish an exception to the discharge of a debt bears the burden of proof by a preponderance of the evidence.  *See Grogan*

- 5 -

*v. Garner,* 498 U.S. 279 (1991); *Ramos v. Rivera (In re Rivera),* 217 B.R. 379, 384 (Bankr. D. Conn. 1998) (Dabrowski, J.);

   **B.      11 U.S.C. § 523(a)(6)**

   **WHEREAS,** Section 523(a) provides in relevant part: "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." 11 U.S.C.A. § 523(a)(6) (West 2012). Accordingly, for a debt to be nondischargeable as a "willful and malicious injury" it first must be "willful" within the meaning of Bankruptcy Code § 523(a)(6). To be "willful," the injury must arise from an intentional tort which is specifically intended to injure the plaintiff or its property. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). "The word 'willful' in [Section 523] (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Id.* Bankruptcy Code § 523(a)(6) is limited to intentional torts and does not except negligent or reckless torts from the scope of the discharge. *Geiger*, 523 U.S. at 61. "Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'" *Id.* at 61-62 (emphasis added);

   **WHEREAS,** to be nondischargeable under Section 523(a)(6), the injury also must be "malicious." "[W]illful" and "malicious" are two separate requirements and to conflate the two requirements into one requirement is error. *See Barboza v. New Form, Inc. (In re Barboza),* 545 F.3d 702, 711-12 (9th Cir. 2008). To be nondischargeable, "[t]he injury caused by the debtor must also be malicious, meaning 'wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will.'" *Ball v. A.O. Smith Corp.,* 451 F.3d 66, 69 (2d Cir. 2006).

"Malice may be implied 'by the acts and conduct of the debtor in the context of the surrounding circumstances.'" *Id.* (citation omitted);

**WHEREAS,** on this record the court is not persuaded that the Debtor intended that the Truck Transaction have the effect of depriving FMC of its collateral (*i.e.,* the Truck). Accordingly, FMC has failed to prove that the subject injury was "willful" within the purview of Section 523(a)(6);

### C.   11 U.S.C. § 523(a)(2)(A)

**WHEREAS,** FMC alleges that the Debt is nondischargeable pursuant to Section 523(a)(2)(A) on the grounds of "actual fraud."

> The Supreme Court has held that § 523(a)(2)(A)'s reference to "actual fraud" was intended to "incorporate the general common law of torts, the dominant consensus of common-law jurisdictions, rather than the law of any particular State." *Field v. Mans*, 516 U.S. 59, 71, n.9, 116 S. Ct. 437, 133 L.Ed.2d 351 (1995). The Second Circuit has construed the meaning of actual fraud to include "a false representation, scienter, reliance, and harm." *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006) (citing Restatement (Second) of Torts § 525). Thus, courts in this circuit have found that "actual fraud" by definition consists of "any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another–something said, done or omitted with the design or perpetrating what is known to be a cheat or deception." *See e.g., In re Lyon*, 348 B.R. 9, 22 (Bankr. D. Conn. 2006).

*McCarron v. Andrews (In re Andrews),* 385 B.R. 496, 508 (Bankr. D. Conn. 2008) (Shiff, J.).

> [B]ecause common law fraud does not always take the form of a misrepresentation, a creditor need not allege misrepresentation and reliance thereon to state a cause of action for actual fraud under § 523(a)(2)(A). Rather, the creditor must establish the following: (1) a fraud occurred; (2) the debtor intended to defraud the creditor; and (3) the fraud created the debt that is the subject of the discharge dispute. The fraud exception under § 523(a)(2)(A) does not reach constructive frauds, only actual ones. The existence of fraud may be inferred if the totality of the circumstances presents a picture of deceptive conduct by the debtor that indicates he intended to deceive or cheat the creditor.

*Deady v. Hanson (In re Hanson),* 432 B.R. 758, 772 (Bankr. N.D. Ill. 2010), *aff'd*, 470 B.R. 808

(N.D. Ill. 2012) (citations omitted).   The "debtor's conduct must involve moral turpitude or

intentional wrong . . . ," *Sattler v. Shallow (In re Shallow),* 393 B.R. 277, 286 (Bankr. D. Conn.

2008) (Krechevsky, J.) (internal quotation marks omitted);

    **WHEREAS,** the court assumes (but does not decide) that FMC otherwise has made out a

*prima facie* case of fraud here.   However, only frauds that relate to the obtaining of "money, property

. . . [or] services" or "an extension, renewal, or refinancing of credit" are within the purview of

Section 523(a)(2)(A).   *See* 11 U.S.C. § 523(a)(2)(A).   The substance of what happened here is that

the Debtor induced an unknowing and therefore involuntary forbearance by FMC when he failed to

advise it of the Contract default (*i.e.,* the Truck Transaction).   The Debt preexisted that event.

Moreover, an involuntary forbearance does not qualify as "an extension, renewal, or refinancing of

credit" within the purview of Section 523(a)(2)(A).   *See Gore v. Kressner (In re Kressner),* 206 B.R.

303, 310 (S.D.N.Y. 1997), *aff'd,* 152 F.3d 919 (2d Cir. 1998).   *Accord Telmark, LLC v. Booher (In*

*re Booher),* 284 B.R. 191, 202 (Bankr. W.D. Pa. 2002); *Conseco v. Howard (In re Howard),* 261

B.R. 513, 518-19 (Bankr. M.D. Fla. 2001).   *But see Bremer Bank, N.A. v. Wyss (In re Wyss),* 355

B.R. 130, 135 *et seq.* (Bankr. W.D. Wis. 2006) (discussing disagreement among the courts on that

point).   Accordingly, FMC has failed to prove that the fraud (if any) falls within the purview of

Section 523(a)(2)(A);[5]

---

    [5]      The court accordingly expresses no opinion as to whether Mr. Goldinho's absconding
with the Truck was the "superseding cause" of FMC's loss.   *Cf. Sharfarz v. Goguen (In re*
*Goguen),* 691 F.3d 62, 2012 WL 3324236, at *5 (1st Cir. Aug. 15, 2012) (discussing "superseding
cause" in a Section 523(a)(2)(A) context).

### D.    11 U.S.C. § 523(a)(4)

**WHEREAS,** Section 523(a)(4) makes nondischargeable debts "for fraud or defalcation while

arising in a fiduciary capacity, embezzlement, or fraud . . . ," 11 U.S.C.A. § 523(a)(4) (West 2012);

**WHEREAS,** at the conclusion of the Trial, the court held that FMC had failed to establish

that the Debtor was a "fiduciary" within the purview of Section 523(a)(4).  (*See* Oral Record at Trial

at 11:14:01 *et seq.* (court's ruling).)   The court stands by that ruling.  *Accord Davis v. Aetna*

*Acceptance Co.,* 293 U.S. 328, 334 (1934) ("The trust receipt may state that the debtor holds the car

as the property of the creditor; in truth, it is his own property, subject to a lien.  The substance of the

transaction is this, and nothing more, that the mortgagor, a debtor, has bound himself by covenant

not to sell the mortgaged chattel without the mortgagee's approval.  The resulting obligation is not

turned into one arising from a trust because the parties to one of the documents have chosen to speak

of it as a trust." (citation omitted));[6]

**WHEREAS,** for the foregoing reasons the court concludes that FMC has failed to prove its

case under Section 523(a)(4);

### CONCLUSION

**WHEREAS,** for the reasons set forth above, the court hereby concludes that the Debt has

been discharged in this chapter 7 case.  Accordingly,  it hereby is **ORDERED** that a  judgment

---

[6]    FMC similarly has failed to prove the elements of "embezzlement" or "larceny."  *See*
4 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 523.10[2] (16th ed. 2009).

consistent herewith shall enter for the Debtor.

Dated: September 28, 2012                                    BY THE COURT

Lorraine Murphy Weil
Chief United States Bankruptcy Judge